Harry H. Wells, Jr., and Paul Johnson, for appellant.

Jack Holt, Attorney General, and Jno. P. Streepey, Assistant Attorney General, for appellee.

McHANEY, J. Appellant was convicted of the crime of murder in the first degree, for the shooting and killing of Louis White, on Sunday, September 15, 1940, and his punishment fixed at death by electrocution.

By this appeal he challenges the sufficiency of the evidence to sustain a conviction of this degree of murder, and we agree with him in this contention. All the parties are Negroes.

The facts are that sometime in the afternoon of Sunday, September 15, 1940, the deceased, Louis White, called at the home of Clint Williams to cut his hair. After being there about an hour, Clint saw appellant coming and told deceased this fact. Deceased went out, got on his mule and said, "I'll go on over here where the other boys is at," meaning the home of James Williams, which he did. Appellant came to Clint's house and remained about ten minutes, then left for the home of James Williams. As he was leaving Clint said to him, "You all been into it once, don't go over there and get into it again," whereupon appellant replied, "I won't." About ten or fifteen minutes later, appellant came back by Clint's home. What Clint had reference to in this

advice to appellant was the fact that appellant and deceased had an altercation about a year before in which deceased had shot appellant.

The other witnesses for the state who were at the scene were Sammie Norris, Edward Brooks, and James Williams. Their testimony shows that deceased came to the home of James Williams, about a quarter of a mile from Clint's home, riding a mule; that he hitched the mule, went into the house where James was shining his shoes and had been there about ten minutes, when Brooks and Norris saw appellant coming; that when he arrived Norris said something to him and he made some reply, walked up on the porch to the door of the room where deceased and James were, pulled out his gun and fired two shots, killing deceased. Neither of these witnesses knew what White was doing, but James informed White that appellant was coming. It is undisputed that when deceased fell he had a pistol in his hand, but none of the witnesses for the state knew when he drew it, whether before or after appellant fired. James testified that appellant walked off the porch and left after the shooting and that he, witness, asked him, "Gulley, what's the matter," and he said, "He shot me. Tell the boys I done it." On the other hand, appellant testified that he went to James Williams' home to talk to him and to see his sick wife; that when he got up on the porch, he looked in and saw deceased; that when deceased saw him, he, deceased, reached for his gun and he beat him to the draw and shot him; that deceased had his gun in his hand when appellant shot him. He also testified that deceased had shot him about a year before, but that they had had no trouble in the interim.

In order to constitute murder in the first degree, the killing must be wilful, deliberate, malicious and premeditated. Section 2969, Pope's Digest. In other words there must be in the mind of the accused a wilful, deliberate, malicious and premeditated specific intention to take life. We think the evidence falls short of showing beyond a reasonable doubt that appellant went to James Williams' home with the intention of killing Louis White. He told Clint Williams he would not do so, and

all the proof shows that deceased had his pistol in his hand when he fell. None of the state's witnesses knew when he drew it, or when he attempted to draw it, but appellant says he attempted to do so when he, appellant, looked in the door.

We think this evidence insufficient to support a verdict and judgment in excess of murder in the second degree, with a penalty of twenty-one years in the state Penitentiary. The judgment will be modified to this extent, and as thus modified will be affirmed.

SMITH, J., dissents.

SMITH, J., (dissenting). It occurs to me that, as a practical matter, the effect of the majority opinion is to hold that it is not murder in the first degree to kill an armed man. Appellant testified that he beat White, the deceased, "to the draw." But no witness corroborated this statement, and every fact and circumstance contradicts it, and the jury did not believe it. Appellant could have said nothing else, unless, indeed, he had pleaded guilty.

All the testimony—save that of appellant—would have supported these findings. Both men were armed, but there was no question as to who was the aggressor. A year prior White had shot appellant, who had not forgiven, and White had not forgotten. White was armed; but this was for defense, and not for aggression. Appellant sought the difficulty, while White was attempting to avoid it.

The killing occurred Sunday afternoon. White was at the home of Clint Williams, cutting Williams' hair. Williams told White that appellant was coming, whereupon White mounted his mule and rode away. Williams said appellant could hardly have avoided seeing White leave the house on the mule.

White went to the home of James Williams, and when Clint Williams saw that appellant was going to follow, he admonished appellant "not to go over there and get into it again." Appellant said "I won't," but he did.

No quarrel occurred at Jim Williams' home. Jim testified that as appellant came upon his porch he (appellant) drew his gun, cocked it and began firing as soon as he entered the door. White was shot twice, once through the right shoulder, the other time through the right side. The jury might well have found, from the testimony of all the persons in the Williams' home, that White made no attempt to draw his pistol until he had been shot twice, and that White did not fire his pistol.

Appellant's remark immediately after killing White explains this case. He said: "He shot me, and I killed him." Here, was malice, deliberation and premeditation; at least, the jury which heard the testimony might have so found, and did find. Appellant was in no danger except the possibility that the fleeing man might, like a worm, turn to defend himself when nothing else remained to be done.

White had the advantage of position, for Jim Williams had told him that appellant was coming; but he made no attempt to use this advantage. His reluctance to kill appellant probably cost him his own life. No one saw White draw his gun, although it was in his hand when he fell, and was found on the floor. No person in the house testified that White ever fired his pistol, and the jury might well have found, and, no doubt, did find, as the verdict reflects, that White made no attempt to draw his pistol until he had been twice shot. If appellant's testimony is untrue—and the jury did not believe it—he pursued White and killed him, for the reason given by himself, that "he shot me, and I killed him."

I think the judgment of the court below should not be disturbed, and I therefore, dissent.