THOMAS *v.* STATE.

4546                                               217 S. W. 2d 839

Opinion delivered February 28, 1949.

*James E. Hyatt, Jr.,* and *A. F. Barham,* for appellant.

*Ike Murry,* Attorney General and *Arnold Adams,* Assistant Attorney General, for appellee.

SMITH, J. An information filed against appellant charged him with the crime of murder in the first degree, alleged to have been committed by shooting and killing one Willliam Duckworth. At the trial from which is this appeal, the shooting was admitted, and a plea of self defense was interposed. Appellant was found guilty of the offense charged and given a death sentence, from which is this appeal.

The killing occurred in a dive, referred to as a honky tonk, on a plantation in Mississippi county, between eleven and twelve o'clock one Saturday night. Many of the negroes on this and adjoining plantations were accustomed to assemble in this place where gambling of different kinds was indulged.

Appellant did not live on this plantation. He operated a ferry across Old river, and offered testimony that he had been told not to go to the honky tonk. The implication of the testimony is that this was an uncommunicated threat of violence on the part of deceased, offered as bearing upon the question as to who was the probable aggressor in the affair which resulted in Duckworth being shot. It was not shown that appellant and Duckworth had had any previous difficulty, but there was an unsettled transaction between these two men, involving $2.00, based upon a loan of that amount by Duckworth to appellant who admitted that the loan had been made, but insisted that it had been repaid.

After arriving at the honky tonk, appellant first engaged in a game of cards, and afterwards entered the room where a dice game was in progress. He won at this game all the money one of the players had, and loaned this player $25 in money, taking a pistol as a pledge of repayment. Appellant did not know the name of this man and would not know him if he saw him. After winning at the dice game, appellant engaged in

a card game, and lost all his money. Later, while mixing with the crowd, in the attempt to borrow money to resume play, he met Duckworth in the hall of the building, who renewed his demand for a repayment of the loan claimed to be due him. Appellant denied owing deceased anything, and said he had no money, when deceased said, "I know you is got money" and advanced upon him with an open knife. The men were within four or five feet of each other when appellant, thinking his life was in danger, drew the pistol which had been pawned to him, and opened fire, inflicting the wounds which resulted in Duckworth's death. The testimony just stated is that of appellant himself.

There are many conflicts in the testimony which warranted the jury in discarding appellant's testimony as false. None of the witnesses appeared to be willing to tell more than they were required to do to answer direct questions.

The honky tonk building was also used as a boarding house for employees on the farm. A hall ran its entire length. Another hall ran into this longer one at a right angle, forming what the witnesses called a T. The halls were about five or six feet wide. According to testimony on behalf of the state, Duckworth, the deceased, was standing near the intersection of the two halls, with his hands down by his side, with nothing in them, when appellant approached and he said nothing to appellant. Seeing Duckworth appellant asked a bystander, "What in the hell is the matter with him?" Duckworth answered, "Nothing." And appellant said "The hell there isn't" and pulled a pistol and began firing. The shots were fired in rapid succession. Duckworth turned and ran out of the building, pursued by appellant, who fired one or more shots after both men had left the building, and while appellant was pursuing Duckworth.

A colored undertaker who prepared Duckworth's body for burial testified that he embalmed the body, and that there was a hole in the left side of Duckworth's lip that came out right under the left ear; that the hole in the lip was a little larger than the hole in the back

of the head. The hole in the lip was clear and it looked as if the bullet penetrated from the front and came out behind the left ear, but he did not know which way it traveled. This witness found evidence of four shots, one in the left breast which was probably the fatal shot. All of the shots were evidently fired while the men were standing in the narrow hall, but there was no evidence of powder burns. The shots fired after Duckworth fled from the building and while appellant was pursuing him were ineffective and missed their mark. Immediately after firing the shots, appellant left the scene of the shooting, crossed the river into Tennessee, and made his way as far as St. Louis, stopping at several places on his way, where he secured temporary employment. He began a return trip to get his wife, and after an absence of two months and thirteen days was arrested just across the Missouri state line, and was returned to this state.

Testimony was offered as to the reputation of both deceased and appellant, and as may be well surmised from what has been said, neither bore a very good reputation, although appellant's was shown to be worse. The fact that he was known among his crap shooting associates as "Papa Lord' is not without significance, and his immediate flight after shooting a man in what he claimed as necessary self defense is a circumstance the jury had the right to consider in weighing his testimony.

We think the testimony sufficient to sustain a conviction for the crime of murder. The fact that appellant continued to fire while Duckworth was in flight shows the intention to kill, but we think it very doubtful whether there was sufficient showing of the deliberation and premeditation required by law to raise an unlawful killing to murder in first degree. A witness testified that he saw the gang at the honky tonk and all of them were drunk or drinking, and that he heard Duckworth say that appellant thought he was awfully smart, that "He runs over here and gambles around and wins some money and goes back and I am going to play even with him." Moreover there was testimony

that a knife with blood on it was found at the place where Duckworth fell and died.

Under all the circumstances we think the judgment should be modified and the death sentence vacated and appellant given a sentence of twenty-one years in the penitentiary for murder in the second degree, and it is so ordered.

Authority for this action is found in the cases of *Gulley* v. *State*, 201 Ark. 744, 146 S. W. 2d 706; *Dinwiddie* v. *State*, 202 Ark. 562, 151 S. W. 2d 93.

The Chief Justice is of the opinion that the judgment should be affirmed and dissents from the modification.

GRIFFIN SMITH, Chief Justice, dissenting. Support for affirming the judgment is found in this paragraph, taken from the majority opinion:

"According to testimony on behalf of the State, Duckworth, the deceased, was standing near the intersection of the two halls, with his hands down by his side, with nothing in them, when appellant approached and he said nothing to appellant. Seeing Duckworth appellant asked a bystander, 'What in the hell is the matter with him?' Duckworth answered, 'Nothing'. And appellant said, 'The hell there ain't', and pulled a pistol and began firing. The shots were fired in rapid succession. Duckworth turned and ran out of the building, pursued by appellant, who fired one or more shots after both men had left the building, and while appellant was pursuing Duckworth".

The jury, on testimony the opinion treats as substantial, assessed the death penalty, and therefore must have found: (a) That the murdered man was unarmed. (b) He was standing at the intersection of two halls, "with his hands down by his side and nothing in them". He did not say anything when Thomas approached. (c) When Thomas observed Duckworth in this inoffensive attitude he asked a bystander "What in the hell is the matter with him?" Duckworth replied, "Nothing". Then Thomas, drawing his pistol, made the comment,

"The hell there ain't". Thomas then began firing. Duckworth fled from the building, with Thomas in close pursuit. While Duckworth was still in flight, Thomas fired "one or more shots."

The opinion makes the additional finding that Thomas was known among his crap-shooting associates as "Papa Lord", and "[this fact] is not without significance, and his immediate flight after shooting a man in what he claimed was necessary self defense is a circumstance the jury had the right to consider in weighing the evidence".

Well, exercising that right the jury did consider the defendant's leave-taking. Furthermore, it considered all circumstances attending the transaction and concluded that when Thomas walked up to an unarmed man in a threatening attitude, provoked a dispute, drew a pistol and began shooting, then followed his victim into the yard and there finished the job—with these facts before it the jury found that this was first degree murder. But this Court says it isn't because, inferentially, the elements of premeditation and intent were lacking. Of course the explanation lies in appellate review of testimony *de novo*.