House *v.* State.

4943                                    324 S. W. 2d 112

Opinion delivered May 18, 1959.

*E. L. Schieffler* and *Charles B. Roscopf*, for appellant.

*Bruce Bennett, Atty. General,* by *Bill J. Davis, Asst. Atty. General,* for appellee.

GEORGE ROSE SMITH, J.   The appellant was convicted of murder in the first degree and was sentenced to death.  For a reversal he questions the sufficiency of the evidence and a number of the trial court's rulings.

House, a man of twenty-four, and the decedent, Ernestine Coley, a girl of nineteen, were residents of Phillips county.  On the afternoon of July 26, 1958, the two met on the street in the community of Oneida, and the girl solicited a ride into Helena, where one of her relatives was in a hospital.  While House was waiting for the girl to change her clothes he made the statement to a friend that he was going to try to have intercourse with her.

On the way to Helena House turned down a side road and stopped the car.   In his written confession House said that he and the girl began fighting when she resisted his advances; on the witness stand he attributed the fight to a dispute over a money matter.   In both narratives he says that in repelling the girl's attack upon him with a soda pop bottle he picked up a lug wrench and struck her a single blow on the head.   In his confession House stated that he didn't know whether the girl was dead, but he rolled her into a water-filled ditch and drove away.   In his testimony he says that she fell into the ditch and appeared to be dead when he left the spot.

Within a short time House changed his mind, returned to the scene, and removed the girl from the ditch.  According to his confession he still did not know whether she was dead, but he drove to Long Lake, tied a heavy weight to his victim's feet, and threw the body off a bridge.  His testimony is substantially to the same effect, except that he says that upon removing the girl from the ditch he could not feel any pulse, "and I figured she was dead, and I got scared and I couldn't think

of nothing to do but try to get rid of her.'' Upon the discovery next day of Ernestine's body in the Lake House was immediately arrested and made a complete confession of his guilt.

In challenging the sufficiency of the State's evidence counsel earnestly insist that the proof fails to establish a deliberate, premeditated intention to take life. Ark. Stats. 1947, § 41-2205; *Gulley* v. *State,* 201 Ark. 744, 146 S. W. 2d 706. But deliberation and premeditation may be inferred from the circumstances of the case, *Weldon* v. *State,* 168 Ark. 534, 270 S. W. 968, and here the evidence was amply sufficient to support the jury's conclusion that the necessary criminal intent existed.

The trampled condition of the grass near the ditch indicated that an extensive struggle had taken place. One of Ernestine's shoes was found there, and a torn portion of her petticoat was discovered ''some distance'' from the shoe. The doctor who examined the body was unable to say whether death was caused by the blow, which did not fracture the skull, or by drowning, there having been water in the lungs. The jury may well have concluded either that the decedent was killed in the course of a protracted fight or that she was thrown into the ditch or lake and left to drown. There is substantial evidence to sustain either view; so the issue of deliberation and premeditation is settled by the jury's verdict.

Several of the appellant's arguments pertain to the admissibility of the written confession. One contention is that the court erred in permitting the introduction of this document without first conducting a preliminary hearing in chambers to determine whether the confession was voluntary. We have often said that it is the better practice for the court to conduct a preliminary hearing in the absence of the jury, *Austin* v. *State,* 193 Ark. 833, 103 S. W. 2d 56; *Lee* v. *State,* 229 Ark. 354, 315 S. W. 2d 916; but the reason for the rule is to avoid the possibility of the jury's being prejudiced if the court rules the confession inadmissible, and hence the accused has no basis for complaint if the confession is actually admitted in evidence. *Greenwood* v. *State,* 107 Ark. 568,

156 S. W. 427; *Bullen* v. *State,* 156 Ark. 148, 245 S. W. 493. The fact that the confession was properly admitted in evidence also answers the argument that the prosecuting attorney should not have been permitted to mention the confession in his opening statement to the jury. *Mouser* v. *State,* 216 Ark. 965, 228 S. W. 2d 472.

It is also insisted that the court failed to instruct the jury that the admission of the confession into evidence was not conclusive of the jury's right to determine the weight that should be given to the confession. There are several defects in the appellant's position on this point. To begin with, the proof that the confession was voluntarily given is virtually undisputed. There is no suggestion that House was subjected to prolonged questioning or to mistreatment of any kind. At the very most House intimates an expectation of leniency on his part, by saying that the sheriff told him, "I won't promise you nothing, but you may not go to the chair if you tell us about it." It may be doubted whether this bare statement presented a jury question about the voluntary nature of the confession, and when there is no conflict in the testimony no instructions on the subject need be given the jury. *Needham* v. *State,* 215 Ark. 935, 224 S. W. 2d 785. Again, the accused's confession differed so slightly from his testimony in the case that it is difficult to perceive how he could have been prejudiced by the introduction of the confession. Finally, when the document was admitted in evidence the court stated in the presence of the jury that "it is the function of the court to . . . decide whether or not the statement or alleged confession is admissible in evidence; then it is a question for the jury to determine whether or not it is worthy of belief and to decide what weight should be attached to it." This was a correct, brief statement of the respective functions of the judge and the jury, *Wallace* v. *State,* 28 Ark. 531, and in the absence of any request whatever that the jury be more fully instructed in the matter we are unwilling to say that the court was under a duty to give a more detailed explanation on its own motion.

A related contention, that the confession was inadmissible because the accused had not been taken before a magistrate and was not represented by counsel, has been rejected in many cases. See, for example, *McGhee* v. *State,* 214 Ark. 221, 215 S. W. 2d 135, and *Lee* v. *State, supra.*

Complaint is made of the court's action in permitting the verdict of guilty of murder in the first degree to be amended by the addition of the words, ''as charged in the information.'' The amendment was entirely proper, as it was made before the verdict was entered of record, before the jury had separated, and after a poll of the jury had disclosed that each juror understood that the effect of the verdict was to require the imposition of the death sentence. *Hamer* v. *State,* 104 Ark. 606, 150 S. W. 142.

When the State offered the lug wrench in evidence the defense objected on the ground that the sheriff had taken it from the car without a search warrant. It is a sufficient answer to this objection to point out that the car belonged to House's grandfather, who did not object to the search, and House is not in a position to complain that another's rights were invaded. Underhill's Criminal Evidence (5th Ed.), § 417.

In accordance with our practice in capital cases we have carefully reviewed the record and have examined every objection interposed by the accused at the trial. We are convinced that the appellant received a fair trial and find no error calling for a reversal of the judgment.

**Affirmed.**