George LANDRETH *v.* STATE of Arkansas

CR 97-716                                    960 S.W.2d 434

Supreme Court of Arkansas
Opinion delivered January 8, 1998
[Petition for rehearing denied February 19, 1998.]

*Arkansas Public Defender Comm'n Capital, Conflicts & Appeals Office,* by: *Jeffrey Weber,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Gil Dudley,* Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This case arises out of the conviction of appellant, George Landreth, for the murder of Daisy Galaher. Landreth was convicted of capital murder and sentenced to life in prison without the possibility of parole. He raises five points on appeal which include issues of prosecutorial misconduct, discovery violations, and the alleged overlap of the capital murder and first-degree murder statutes. None of the issues raised has merit, and we affirm.

On March 15, 1995, Landreth was living with his ex-wife, Patricia Summerville, and her seventeen-year-old son, Shannon Summerville. Shannon testified at trial that Landreth came to the Summerville home at about 8:45 p.m. on that date. He first told Shannon and then told both Patricia Summerville and Shannon that he had killed Daisy Galaher. Landreth related to Shannon that he had picked up Galaher to go for a drive with him and that they went to the Tri-County Lake spillway, where they got out of the truck. Landreth put on his gloves, grabbed a shotgun from behind the seat of his truck, and shot her. The first time that he shot, he hit her in the arm. The second time, he shot her in the head. Landreth explained that he intended to dispose of her body in a well, but the body was too heavy. He eventually dragged her body to the Tri-County Lake spillway and left her in the water.

Patricia Summerville testified that in a separate conversation that same night, with Shannon present, Landreth told her the same story. She also testified that she and Laura Baker, who was Landreth's daughter, went over to his house the following morning and that he gave more details of the murder to both of them. Ms. Summerville testified that she and Laura Baker encouraged him to turn himself in, but that he refused to do so because he believed he could not be convicted because he had thrown the shotgun and Galaher's purse into the river.

In her testimony, Laura Baker confirmed the testimony of Patricia Summerville by testifying that they had been to see Landreth on the morning of March 16, 1995, and that he had given a detailed account of how he killed Galaher. Baker also testified that she had gotten two telephone calls from her father about the murder. In the first conversation which took place around 4:00 p.m. on March 15, 1995, Landreth said he was going to kill Galaher. In the second conversation which occurred that night between 8:00 p.m. and 8:30 p.m., Landreth told Baker that he had killed her.

The State also presented physical evidence linking Landreth to the murder. Chanteil Bequette, a criminalist with the State Crime Lab, testified that she found hairs that were similar to those of the victim in the truck driven by Landreth. She also found

gunpowder residue on Landreth's hands. Lawrence Quill, a special agent with the F.B.I., testified that the DNA profiles from the blood taken from scrapings on the back of the truck driven by Landreth substantially matched the DNA profiles of the victim. The physical evidence at the crime scene testified to by investigators with the Arkansas State Police and the county which included the pools of blood and drag marks to the water corroborated the testimony given by the Summervilles and Baker.

## I.  *Right to Remain Silent*

For his first point, Landreth claims that the prosecutor improperly made reference to the fact that he had not testified in his own defense. Because of this, he contends that the trial court should have granted his motion for a mistrial due to the prejudice caused by the remark.

During closing argument, the prosecutor made this argument to the jury about Landreth's conversation with Laura Baker:

> Have you heard anything about that conversation other than what Laura said was said? No. The reason why you've haven't is because the truth hurts.

Landreth objected to this as a comment on his failure to testify because he was the only other person with knowledge of his conversation with Baker. The trial court overruled the objection without additional comment. The State continued with its argument:

> Ladies and gentlemen, as I was saying, other than what we heard Laura Baker say was the substance of that conversation, we heard nothing else. And she said to you that, "My dad called and he said, 'I did it.'" And Laura said, "Did what?" "I killed Daisy. I killed Daisy." That's exactly what he said at 4:00 o'clock that he was gonna do, and that's exactly what he said he did at 8:30. And then further —.

The trial court interrupted the prosecutor and called the attorneys to the bench for a sidebar conference. He advised the prosecutor that he was "flirting" with a comment on the defendant's failure to testify and warned him accordingly. The defense counsel again

objected to no avail. Counsel made no request for a declaration of a mistrial or for an admonition to the jury.

The State does not argue to this court that Landreth's objection was not properly preserved or that the comment made by the prosecutor was not a comment on the defendant's failure to testify. Rather, the State argues that the prosecutor's comment was harmless in light of the overwhelming evidence amassed against Landreth.

■ First, we believe the prosecutor's argument was an impermissible comment on Landreth's right to silence guaranteed by the Fifth Amendment. It has long been the law in this state and this country that a prosecutor may not draw attention to the fact of, or comment on, a defendant's failure to testify. Otherwise, by commenting on his silence, the State makes the defendant a witness against himself and thereby violates the defendant's Fifth Amendment rights. *See Chapman v. California*, 386 U.S. 18 (1967). *See also Bradley v. State*, 320 Ark. 100, 896 S.W.2d 425, (1995) (*citing* Act 82 of 1885, now codified as Ark. Code Ann. § 16-43-501 (Repl. 1994)). Even a veiled reference to the defendant's silence is improper. *Bradley v. State, supra; Adams v. State*, 263 Ark. 536, 566 S.W.2d 387 (1978).

The comment made by the prosecutor in the instant case is very similar to that made in *Bailey v. State*, 287 Ark. 183, 697 S.W.2d 110 (1985), where the prosecutor proclaimed in closing argument:

> The only thing that we've heard here today about which occurred in that room is from [the victim]. She's the only person. The two ladies that were called they weren't in that room.

*Bailey*, 287 Ark. at 184, 697 S.W.2d at 110. The fact that the only two people in the room were the victim and the defendant meant that the defendant was the only other person who could have testified about what happened in that room. The same holds true in the instant case. In both situations, the prosecutor wrongfully alluded to the defendant's failure to testify.

■ But our analysis does not end there. In *Bradley v. State, supra,* this court discussed what is required to find that a prosecu-

tor's improper comment on the defendant's constitutional right not to testify was harmless error:

> In *Chapman v. California*, 386 U.S. 18 (1967), the Supreme Court declared that references to a defendant's failure to testify violate the Fifth Amendment privilege against self-incrimination, but can be harmless error if it is shown beyond a reasonable doubt that the error did not influence the verdict. [*Griffin v. California*, 380 U.S. 609, 615 (1965).] Practical application of the *Chapman* test involves excising the improper remarks and examining the remaining evidence to determine if it can be shown beyond a reasonable doubt that the error did not influence the verdict. *Logan v. State*, 299 Ark. 266, 773 S.W.2d 413 (1989).

*Bradley v. State*, 320 Ark. at 105, 896 S.W.2d at 428. We went on to hold in *Bradley* that the evidence against the defendants was so overwhelming that the comments constituted harmless error.

██    Likewise, after discarding the testimony of Laura Baker, which, we conclude, was tainted by the prosecutor's argument, there remains overwhelming evidence of Landreth's guilt which renders the improper comments harmless beyond a reasonable doubt. The State presented the testimony of two other witnesses, Shannon Summerville and Patricia Summerville, to whom Landreth confessed his crime. Both related the detailed account he had given to them of how he killed the victim. Landreth challenges the credibility of the Summervilles, but the jury, as factfinder, chose to believe them. The testimony of the two witnesses was also independently corroborated by the physical evidence collected by the State, including hair similarities, blood splatters, corresponding DNA profiles for the blood found on the back of the truck and the victim's blood, and positive gun residue tests on Landreth's hands as well as the bloody drag marks at the crime scene. Hence, had Baker never testified, there remained overwhelming evidence of Landreth's guilt. The error, accordingly, was harmless beyond a reasonable doubt. For that reason, we hold that the prosecutor's comment on Landreth's failure to testify did not constitute reversible error.

We also note that the trial court found in its order denying the motion for a new trial that the jury would have reached the same result even without the testimony of Laura Baker. Though

this finding was due to Baker's recanting of her trial testimony and then her later affirmance of it, this is additional confirmation of the fact that the State's evidence was more than sufficient even without Baker's testimony.

## II. Continuance

Next, Landreth claims that the trial court erred in not granting him a continuance, or, in the alternative, a new trial based on the fact that both defense counsel and the prosecutor received an anonymous letter containing exculpatory evidence three days before the trial. Landreth adds that the prosecutor did not divulge this information to him or properly investigate the exculpatory information. The letter in question set out a story in which the victim, Daisy Galaher, was not killed by Landreth but instead was kidnapped and delivered to several people outside the county as part of an intricate drug operation. This apparently led to her death. The anonymous letter contained the names of those involved in the "conspiracy." Some of the names appeared from their context in the letter to be aliases while others were the actual names of people with a criminal history.

On the day of the trial, defense counsel moved for a continuance to give him time to investigate the allegations in the letter. A hearing was immediately held where Landreth argued that the prosecutor had received the same letter, had not informed the defense counsel, and had not fully investigated the letter. The State answered with the testimony of Arkansas State Police Investigator Glenn Sligh to show that an investigation into the letter had been commenced but that nothing had been developed to substantiate any assertions in the letter. The trial court ruled that the investigation of the letter should continue, but it denied the continuance motion. The court added that it could not continue a trial every time an anonymous letter appeared a few days before the trial date.

Following the conviction in this matter, the trial court considered the defense counsel's motion for a new trial, which was based partially on the allegation that the State had not properly investigated the letter. Landreth offered evidence of the State's

inactivity with regard to the letter. The trial court ruled that though it was concerned about the actions taken by the prosecutor, based on the evidence submitted, including the letters themselves, there was insufficient evidence to justify a new trial.

■ ■ This court has made it clear that a motion for a continuance is addressed to the sound discretion of the trial court, and the court's decision will not be reversed absent an abuse of discretion. *Travis v. State*, 328 Ark. 442, 944 S.W.2d 96 (1997); *Hill v. State*, 321 Ark. 354, 912 S.W.2d 229 (1995); *Wilson v. State*, 320 Ark. 142, 895 S.W.2d 524 (1995). Continuances are governed in part by Ark. R. Crim. P. 27.3, which requires good cause and a consideration of the public's interest in a prompt disposition of cases.

■ Continuances are further governed by statute which requires an affidavit from the defense:

> [S]howing the materiality of the evidence expected to be obtained and that due diligence has been used to obtain it. If the motion is for an absent witness, the affidavit must show what facts the affiant believes the witness will prove and not merely show the effect of the facts in evidence, that the affiant himself believes them to be true and that the witness is not absent by the consent, connivance, or procurement of the party asking the postponement.

Ark. Code Ann. § 16-63-402(a) (1987). This court has further required that the movant for a continuance show by affidavit the *likelihood* of procuring the absent witnesses. *See Travis v. State, supra; Hill v. State, supra; Cloird v. State*, 314 Ark. 296, 862 S.W.2d 211 (1993).

■ Landreth has not shown that the trial court abused its discretion in denying the motion for continuance. Landreth made no showing of any likelihood of procuring the absent testimony. All that he presented was the anonymous letter itself. Moreover, as the State properly underscores in its brief, the record does not reveal that Landreth ever filed an affidavit showing the materiality of the evidence expected to be obtained or that due diligence had been used to obtain that evidence, as required by § 16-63-402(a). Finally, Landreth cannot succeed in his argument that the State

violated *Brady v. Maryland*, 373 U.S. 83 (1963), and Ark. R. Crim. P. 17.1, when his counsel also received the letter in question before trial.

██ ██ Landreth further contends that because the State did not conduct an effective investigation, the trial court should have granted his motion for a new trial. The deficiency in this argument is that we have held a defense counsel cannot simply rely on the State's investigation as a substitute for his or her own. *See, e.g., State v. Pulaski County Circuit Court*, 316 Ark. 514, 872 S.W.2d 414 (1994). Nor can defense counsel or the court require the State to take a particular investigative course. *Id.* In order to succeed in a motion for new trial, a defendant has the burden of developing and presenting evidence sufficient to show that a new trial is warranted, which, again, is discretionary with the trial court. *See Miller v. State*, 328 Ark. 121, 942 S.W.2d 825 (1997). Defense counsel had a month to develop supporting evidence. He failed to do so and, thus, the burden was not met.

Moreover, the State presented evidence that an investigation had indeed been conducted which led the prosecutor to believe that the anonymous letter was a ruse. The letter claimed that the culprit behind the kidnapping and murder of the victim was the son of an ex-husband of the victim. However, the police investigation uncovered that there were no living sons of ex-husbands of the victim who could have been responsible for the crime.

The trial court correctly denied the motion for a continuance and the motion for a new trial.

### III. Overlap

██ Landreth next argues that the definition for capital murder found in Ark. Code Ann. § 5-10-101(A)(4) (Repl. 1993), "impermissibly overlaps" with the definition of first-degree murder found in § 5-10-102(A)(2) (Repl. 1993), and, therefore, the jury was given unfettered discretion to convict him of either offense which violates the Eighth and Fourteenth Amendments to the United States Constitution. This proposition has been squarely rejected by this court, when the death penalty has been at issue. *See, e.g., Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677

(1995), *cert. denied*, 116 S. Ct. 1436 (1995); *Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943 (1996), *cert. denied*, 117 S. Ct. 436 (1996). Landreth relies on death-penalty cases for the most part in making his argument, even though the State waived the death penalty in this case. Landreth presents us with no good reason to overturn our line of death cases, and we decline to do so.

Landreth does contend, without really developing the issue, that overlapping in the two statutes resulted in an arbitrary verdict in this case, but beyond making this conclusory statement, he does not tell this court how the statutes overlap or explain why this is reversible error when the death penalty is not involved. Surely, giving the jury the option of considering the lesser included offense of first-degree murder did not inure to Landreth's detriment. This point is without merit.

## IV. Public Defenders

For his final point, Landreth urges that the prosecutor's reference to defense counsel as "public defenders" on cross-examination of a witness resulted in such prejudice that it could only be cured by the trial court's declaring a mistrial. During the cross-examination of a witness, the prosecutor asked the witness if he "had ever told anyone other than the public defenders that you saw . . . ." Defense counsel objected and asked for a mistrial. The court denied the motion and offered to admonish the jury to disregard the last question. Defense counsel reluctantly accepted the admonition. Landreth now claims that the admonition was insufficient to correct the error.

This court has previously rejected a similar argument where the trial court referred to defense attorneys "from the Public Defender's Office." *See Vaughn v. State*, 289 Ark. 31, 709 S.W.2d 73 (1986). In *Vaughn*, we opined that the objection made was more speculative than practical. *Id*. The same is true here. Any prejudice caused by reference to the defense counsel as "public defenders" is speculative at best. Even defense counsel, in making the objection, admitted that he did not believe that the reference should be prejudicial, but he thought others might be prejudiced. If there was prejudice, and this court is highly skepti-

cal that any prejudice attached to the comment, it was not so great as to warrant a mistrial. In any event, it was cured by the admonition. *Sullinger v. State,* 310 Ark. 690, 840 S.W.2d 797 (1992); *Porter v. State,* 308 Ark. 137, 823 S.W.2d 846 (1992). There was no reversible error in this regard.

### V. Rule 4.3(h)

The record has been researched for prejudicial error in accordance with Ark. S. Ct. R. 4-3(h), and none has been found.

Affirmed.