Cite as 2023 Ark. 137

# SUPREME COURT OF ARKANSAS
**No.** CR–22–461

| | | |
|---|---|---|
| LAVOYCE WILDER | | **Opinion Delivered:** October 12, 2023 |
| | APPELLANT | APPEAL FROM THE PIKE COUNTY CIRCUIT COURT [NO. 55CR-19-72] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE TOM COOPER, JUDGE |
| | APPELLEE | |
| | | AFFIRMED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Lavoyce Wilder appeals the Pike County Circuit Court's order convicting him of two counts of rape, three counts of first-degree sexual assault, and two counts of sexual indecency with a child and sentencing him to two terms of life imprisonment, three terms of thirty years' imprisonment, and two terms of six years' imprisonment, respectively, to run concurrently. For reversal, he argues that the circuit court abused its discretion by admitting testimony of a witness under the pedophile exception to Arkansas Rule of Evidence 404(b), denying his motion for mistrial, and excluding evidence of the victims' prior sexual conduct pursuant to the rape-shield statute set forth in Arkansas Code Annotated section 16-42-101(c) (Supp. 2019). We affirm.

## I. *Facts*

Because Wilder does not challenge the sufficiency of the evidence, we provide only a recitation of the relevant facts supporting the arguments on appeal. There are five female

victims in this case: Minor Victim 1 (MV1); Minor Victim 2 (MV2); Minor Victim 3 (MV3); Minor Victim 4 (MV4); and Minor Victim 5 (MV5). From 2009 to 2012, MV1 and MV2's mother was married to Wilder when the girls were between the ages of eight and eleven, and Wilder's crimes against MV1 and MV2 occurred during that period. Wilder's crimes against MV3, MV4, and MV5 occurred from 2014 to 2019 when the girls moved with their mother to Wilder's home. After their mother died, the girls moved to their grandmother's house but maintained contact with Wilder.

The following facts led to Wilder's arrest. Special Agent Pete Penney of the Arkansas State Police took an initial report on an investigation against Wilder regarding allegations of sexual abuse. Penney scheduled interviews with the girls, collected cell phones, and prepared search warrants. According to Penney's arrest-warrant affidavit, MV4 was interviewed at the Child Advocacy Center on September 6, 2019. During the interview, MV4 stated that she had been having a sexual relationship with Wilder since she was fourteen. At the time of the interview, MV4 was eighteen, and Wilder was fifty-two.

MV5 was interviewed at the Child Advocacy Center on September 3, 2019. MV5 stated that she and Wilder had been in a sexual relationship since she was thirteen or fourteen. At the time of the interview, she was seventeen years old. During the interview, MV5 stated that she had sex with Wilder two weeks before the interview. She stated that Wilder took her to gun shows, and then he took her to his vehicle to have sex with her or to have her perform oral sex on him.

MV3 was interviewed at the Child Advocacy Center on September 3, 2019. MV3 stated that she and Wilder had been having a sexual relationship since she was fourteen years old. She was twenty at the time of the interview.

After MV3, MV4, and MV5 were interviewed, MV3 contacted MV1 and asked if anything had happened to her when she lived with Wilder, and MV1 affirmed that it had. Penney contacted MV1, who resided in Illinois, and she told Penney that "some things did happen to her when she was younger and living with Wilder."

On October 9, 2019, MV1 was interviewed at the Madison County Illinois Child Advocacy Center. MV1 stated that her mother was married to Wilder when she was between the ages of eight and fourteen. She stated that when she was eight or nine years old, Wilder began touching her genitals with his hand and mouth. She also stated that she and Wilder watched pornographic movies during which time he told her to remove her pants and underwear and sit on his lap. During that time, Wilder touched her genitals with his hands and mouth. MV1 stated that, on one occasion, Wilder took her to Walmart in Hot Springs and bought a pair of women's thong underwear. According to MV1, Wilder told her to put on the underwear, and he took pictures of her.

On November 26, 2019, law enforcement arrested Wilder. The State initially charged Wilder with four counts of rape and four counts of sexual indecency with a child. On January 21, 2022, the State amended the felony information and charged Wilder with two counts of rape, three counts of first-degree sexual assault, two counts of sexual indecency with a child, and one count of second-degree sexual assault.

Prior to trial, on October 26, 2021, Wilder filed a motion to admit evidence of MV3's, MV4's, and MV5's prior sexual conduct, pursuant to Arkansas Code Annotated section 16–42–101(c). In support of his motion, he filed an offer of proof containing statements by Treva Foster, a family friend. In his motion, Wilder stated that MV5, the youngest of the three sisters, lived with Foster in the summer of 2017. During that time, MV5 purportedly told Foster "a number of things" that were "directly contradictory to what [she] and her sisters told both the child advocacy center personnel and law enforcement[.]" Wilder claimed that "[t]his contradictory information goes directly to attacking the credibility of the sisters' statements about when sexual activity began[.]" Specifically, Wilder sought to admit MV5's statements to Foster that "her father and mother traded her and her sisters out for sex and in return got drugs from different men" and that "her dad and brother had sex with her and her sisters[.]" On the morning of trial, the circuit court held an in camera hearing and found that evidence of the victims' prior sexual conduct "was not relevant to show an impeachment or an impeaching issue" and that "the inflammatory nature outweighed the probative value of that statement."

On February 16, 2022, the case proceeded to a jury trial. All five girls testified at trial about years of sexual abuse perpetrated by Wilder. At the close of the State's case-in-chief, the circuit court denied Wilder's motion for directed verdict. Among the witnesses for the defense was Paula Wilder Abatte, Wilder's adopted sister, who testified that she had experienced a sexual encounter with Wilder when they were children. At the close of the defense's case, Wilder renewed his motion for directed verdict, which the circuit court denied.

A Pike County jury convicted Wilder of two counts of rape of MV1 and MV2; three counts of first-degree sexual assault against MV3, MV4, and MV5; and two counts of sexual indecency with a child against MV1 and MV5. The jury found Wilder not guilty of second-degree sexual assault. He received concurrent sentences of two terms of life imprisonment for rape, three terms of thirty years' imprisonment for sexual assault, and two terms of six years' imprisonment for sexual indecency. On February 22, 2022, the circuit court entered an order reflecting the jury's verdict and sentence, and he timely brought his appeal. We remanded to settle the record in *Wilder v. State*, 2023 Ark. 60. On May 6, 2023, Wilder filed a supplemental record pursuant to our holding in *Wilder*, 2023 Ark. 60.

## II. *Arguments on Appeal*

### A. Pedophile Exception and Mistrial

On appeal, Wilder argues that pursuant to the pedophile exception to Rule 404(b), the circuit court abused its discretion in admitting the testimony of his sister, Paula Wilder Abatte, about a sexual encounter with Wilder when they were children. Next, he contends that the circuit court abused its discretion by denying a mistrial motion based on Abatte's testimony that the circuit court admitted under the pedophile exception. He asserts that Abatte's testimony was irrelevant and improperly prejudicial.

Before turning to the merits of Wilder's arguments, we address the threshold issue of whether these arguments are preserved for our appellate review. In criminal cases, issues raised must be presented to the circuit court in order to be preserved for appeal. *State v. Grisby*, 370 Ark. 66, 69, 257 S.W.3d 104, 107 (2007). Arguments not raised at trial will not be addressed for the first time on appeal. *Bragg v. State*, 2023 Ark. 66, at 6, 663 S.W.3d 375,

380. Parties cannot change the grounds for an objection on appeal and are bound on appeal by the scope and nature of the objections and arguments presented at trial. *Id.* at 6–7, 663 S.W.3d at 380.

At trial, during Abatte's cross-examination, the following colloquy occurred:

PROSECUTOR: Paula, do you remember having a conversation with Rachel Griffin [Wilder's ex-wife] about some things that happened between you and your brother?

ABATTE: Yes, sir, I do.

PROSECUTOR: Do you remember having her – a conversation with her about some sexual things that happened between you and him?

ABATTE: Yes, sir.

PROSECUTOR: How old were you when that happened?

ABATTE: I was –. The conversation or –.

PROSECUTOR: No. How old were you when it – when that happened between you and your brother?

ABATTE: That was when I was a little kid.

PROSECUTOR: When you were a little girl.

ABATTE: Yes, sir.

. . . .

DEFENSE COUNSEL: About sexual stuff?

PROSECUTOR: Uh-huh.

DEFENSE COUNSEL: Alright. Your Honor, may we approach?

(Attorneys approach the bench)

6

DEFENSE COUNSEL: I'm going to ask for a mistrial. That's a clear violation of rape shield. Clear.

THE COURT: I –

(Simultaneous talking)

THE COURT: –that direction.

DEFENSE COUNSEL: Huh?

THE COURT: Rape shield does not go that direction. Rape shield is not there to protect the defendant.

PROSECUTOR: It's –

DEFENSE COUNSEL: It's there to protect the witness from having to testify about it. And he did not give us notice that this witness–

PROSECUTOR: Judge –

DEFENSE COUNSEL: This witness is not on trial.

PROSECUTOR: And this is a pedophile exception.

THE COURT: Go ahead.

DEFENSE COUNSEL: He did not give us notice that they was going into a witness sexual activity.

PROSECUTOR: It's–. There is –. It's clearly –

(Simultaneous talking)

THE COURT: Y'all talk one at a time, please.

DEFENSE COUNSEL: He's asked a witness about her sexual activity, which has to be done through rape shield.

THE COURT: I think it clearly falls under the pedophile exception that the Supreme Court has carved out probably seventeen years ago.

PROSECUTOR: And, Judge, it is clearly in the report that was provided–

7

| THE COURT: | It was? |
|---|---|
| PROSECUTOR: | —to Mr. Stayton. Yes, sir. |
| DEFENSE COUNSEL: | And that's the reason—. That's my point. There's no notice of rape shield. |
| THE COURT: | Overruled. |

Without divulging specific details, Abatte testified that "all this stuff happened" with her brother when she was six or seven years old, and he was nine or ten years old. When asked if "there [was] anything else after that," she responded, "No, sir."

A careful review of the record reveals that the pedophile-exception issue is not preserved for appeal. During the bench conference, defense counsel raised the rape-shield statute—not the pedophile exception—as the basis for his objection to Abatte's testimony, and the prosecutor—not defense counsel—informed the circuit court that "this [issue] is a pedophile exception." When the circuit court stated that Abatte's testimony "clearly falls under the pedophile exception," defense counsel insisted that "[t]here's no notice of rape shield" to which the circuit court "overruled." Thus, defense counsel failed to make an argument specifically based on the pedophile exception to Rule 404(b), as he now argues on appeal. It is well settled that a party is bound by the nature and scope of the arguments made at trial and may not enlarge or change those grounds on appeal. *Stewart v. State*, 2012 Ark. 349, at 8, 423 S.W.3d 69, 74. Because Wilder failed to make the argument below, we conclude that it is not preserved for our appellate review.

Further, we conclude that the mistrial issue is not preserved. Defense counsel based his motion for mistrial on a violation of the rape-shield statute instead of the pedophile

8

exception, as he now argues on appeal. Specifically, defense counsel stated, "I'm going to ask for a mistrial. That's [a] clear violation of rape shield." For the foregoing reasons, we decline to address this argument because Wilder did not present it to the circuit court as a basis for his mistrial motion. *Id.*, 423 S.W.3d at 74. Therefore, we hold that the argument Wilder now makes on appeal is not preserved. Accordingly, we affirm these two points.

## B. Rape-Shield Statute

Finally, Wilder argues that the circuit court erred by denying his motion to introduce prior instances of sexual conduct as an exception to the rape-shield statute, pursuant to Arkansas Code Annotated section 16-42-101(c). Specifically, he contends that the circuit court should have admitted the statements MV5 made to a family friend about her parents trading the girls in exchange for sex and drugs and about the alleged sexual conduct between the girls, their father, and their brother. Wilder also asserts that the prior sexual conduct of MV3, MV4, and MV5 should have been admissible to impeach the sisters' statements to police that Wilder took their virginity.

The rape-shield statute provides that evidence of specific instances of a victim's prior sexual conduct with any person is not admissible by the defendant, either through direct examination of any defense witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim or for any other purpose. Ark. Code Ann. § 16-42-101(b). However, when the circuit court, at an in camera hearing, makes a written determination that such evidence is relevant to a fact in issue and that its probative value outweighs its inflammatory or prejudicial nature, an exception is granted. Ark. Code Ann. § 16-42-101(c). The purpose of the rape-shield statute is to shield victims

9

of rape or sexual abuse from the humiliation of having their sexual conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *Vance v. State*, 2011 Ark. 392, at 7, 384 S.W.3d 515, 519. The circuit court is vested with discretion to determine whether such evidence is relevant and will not be reversed unless the decision constitutes a clear error or a manifest abuse of discretion. *McKee v. State*, 2020 Ark. 327, at 8, 608 S.W.3d 584, 591.

In *State v. Townsend*, 366 Ark. 152, 158, 233 S.W.3d 680, 685 (2006), this court embraced a five-factor test to consider whether the prior sexual conduct of a child is admissible to prove an alternate source of the child's sexual knowledge. The *Townsend* factors are (1) that the prior act clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect. *Id.* at 158, 233 S.W.3d at 685.

In the case at bar, the circuit court properly excluded the evidence based on the fifth *Townsend* factor—the appropriate balancing test set forth in section 16-42-101(c). Here, the circuit court ruled that "the inflammatory nature outweighed the probative value of that statement." We agree. MV5's statements to a family friend about her parents trading the victims for sex and drugs and about the alleged sexual conduct between the girls, their father, and their brother are highly inflammatory and outweigh any probative value of the evidence. Moreover, we also agree with the circuit court that the evidence "was not relevant to show an impeachment or an impeaching issue." Not only is that evidence irrelevant to the issue of whether Wilder committed these sex acts against MV3, MV4, and MV5, but it is also

inadmissible when seeking to undermine the victims' credibility. *See State v. Kindall*, 2013 Ark. 262, at 8, 428 S.W.3d 486, 491. Therefore, we hold that the circuit court did not abuse its discretion by excluding this evidence under the rape–shield statute.

### III. *Rule 4-3(a) Review*

Because Wilder received a sentence of life imprisonment, the record has been reviewed for all errors prejudicial to him, as required by Arkansas Supreme Court Rule 4–3(a). No reversible error was found.

Affirmed.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.