Cite as 2026 Ark. 97

# SUPREME COURT OF ARKANSAS
**No.** CR–25–768

| | | |
|---|---|---|
| OWEN WATSON | | **Opinion Delivered:** May 7, 2026 |
| | APPELLANT | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT [NO. 18CR-22-338] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE RANDY PHILHOURS, JUDGE |
| | APPELLEE | <u>AFFIRMED AS MODIFIED</u>. |

**NICHOLAS J. BRONNI, Associate Justice**

Owen Watson began raping Minor Victim when she was just ten years old, and four months after she turned fourteen, MV gave birth to Watson's biological daughter. A jury convicted Watson of child rape, and the circuit court sentenced him to life in prison. He appeals his conviction and sentence, arguing evidentiary issues, judicial bias, and other supposed errors. We reject Watson's claims and affirm both his conviction and his sentence.

*Factual and Procedural Background*

When MV was ten years old, Watson, her mother's boyfriend, moved into their home. Watson then began raping MV. The abuse continued for years until MV became pregnant—at age thirteen—and her family contacted police. Following an investigation, the State charged Watson with rape.

Watson's trial was short. MV testified that Watson had begun raping her when she was just ten years old, and she described how she had learned she was pregnant. A police officer, Chelsey Stafford, testified about the investigation and, particularly relevant here,

how she had collected and stored DNA samples from Watson. A forensic DNA technician, Christopher Glaze, testified that DNA testing confirmed that Watson is the biological father of MV's child. And Watson did not contest paternity; his counsel repeatedly acknowledged that Watson is the biological father of MV's child.

The jury convicted Watson of rape, and the circuit court sentenced him to life in prison. Watson appeals.

*Discussion*

Watson raises five claims on appeal. Broadly speaking, he claims that the circuit court improperly: (1) heard hearsay testimony; (2) admitted DNA evidence without sufficient foundation; (3) denied his motion for a mistrial on the basis of a prospective juror's statement that she had worked with defense counsel at the public defender's office; (4) denied his recusal motion; and (5) concluded that he was a habitual offender. None of those claims have any merit, and we affirm Watson's conviction and sentence.

1. Start with the hearsay claim. Watson argues that the circuit court erred when it permitted Officer Stafford to testify that MV had told her that "Watson had been raping her since she was ten years old." Watson objected and argued that statement was inadmissible hearsay. The circuit court overruled the objection, explaining the statement was not being used to prove rape but to explain how Officer Stafford got involved with the case and how she conducted her investigation. That was not error. On the contrary, consistent with the circuit court's conclusion here, we have previously held that "testimony introduced to explain an officer's actions in pursing and apprehending a suspect is not hearsay." *Dixon v. State*, 2011 Ark. 450, at 14–15, 385 S.W.3d 164, 174. So we reject Watson's argument.

2. Second is Watson's argument that the circuit court erroneously admitted DNA evidence. Watson claims that DNA evidence should never have been admitted because "[t]here was no proof as to the chain of custody of the DNA exhibits whatsoever." But that is not the case. Officer Stafford testified about collecting DNA samples from Watson and MV's child, sealing those samples in manilla envelopes labeled with the case number, and delivering them to a secure evidence locker. Officer Stafford also testified that an evidence clerk transported those samples to the state crime laboratory for testing. And Glaze, the forensic DNA technician at the state crime laboratory, testified that he did not believe anyone had tampered with the envelopes used to collect the DNA samples.

Arkansas Rule of Evidence 901(a) says that "evidence is admissible so long as there is evidence sufficient to support a finding that the matter in question is what its proponent claims." *Faulkner v. State*, 2026 Ark. 60, at 8, 728 S.W.3d 352, 357 (quoting Ark. R. Evid. 901(a)) (internal quotation marks omitted). That rule does not require the State to "eliminate every possibility of tampering" or to "'account[] for . . . every person who could have conceivably'" touched a piece of evidence. *Lee v. State*, 326 Ark. 229, 236, 931 S.W.2d 433, 437–38 (1996) (quoting *Phills v. State*, 301 Ark. 265, 783 S.W.2d 348 (1990)). It need only "establish[] within a reasonable probability that the evidence ha[s] not been tampered with." *Guydon v. State*, 344 Ark. 251, 255, 39 S.W.3d 767, 770 (2001). The testimony above—explaining how the evidence was collected, secured, and moved—was more than sufficient to meet that standard.

3. Next is Watson's claim that the circuit court erred when it denied his motion for a mistrial after a prospective juror stated she knew Watson's attorney from her employment

at the public defender's office years earlier. Watson claims that statement revealed he was indigent and prejudiced his defense. To obtain a mistrial, Watson had to demonstrate that the prospective juror's statement was "so prejudicial that justice could not be served by a continuation of the trial." *Hill v. State*, 255 Ark. 720, 722, 502 S.W.2d 649, 650 (1973). Incontrovertibly, a mistrial is such "an extreme and drastic remedy," *Franklin v. State*, 2024 Ark. 9, at 4, 682 S.W.3d 1, 4, and only "appropriate when there is a high degree of necessity," *Renico v. Lett*, 559 U.S. 766, 774 (2010) (citing *Arizona v. Washington*, 434 U.S. 497, 506 (1978)) (internal quotation marks omitted).

Watson does not make that showing, preferring to simply speculate that mere knowledge that a prospective juror had once worked alongside defense counsel in the public defender's office would lead jurors to conclude that Watson was indigent and use that knowledge against Watson. But naked conjecture is not prejudice, and we have previously rejected substantially similar claims. *See Vaughn v. State*, 289 Ark. 31, 709 S.W. 73 (1986) (rejecting as speculative, a defendant's claim that he was so prejudiced by the circuit court's reference to his attorney as a public defender); *Landreth v. State*, 331 Ark. 12, 22–23, 960 S.W.2d 434, 439 (1998) ("Any prejudice caused by reference to the defense counsel as 'public defenders' is speculative at best."). We likewise do so here.

4. Then there is Watson's recusal motion. Watson argues that the circuit court abused its discretion when it denied his recusal motion after making an off-hand comment before trial expressing skepticism about Watson's claim that while the DNA proved he is the father of MV's child, he did not rape MV. The rules of judicial conduct require disqualification "in any proceeding in which the judge's impartiality might reasonably be

4

questioned." Ark. Code Jud. Conduct R. 2.11(A). That is a high standard, and Watson's allegation falls short here. Impartiality does not require gullibility; nor does it bar judges from forming opinions and expressing skepticism. *See In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (2d Cir. 1943) ("Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions."); *see also Bentonville Sch. Dist. v. Sitton*, 2022 Ark. 1, at 4 ("A mere allegation that a judge's conduct has the appearance of impropriety falls short of the disqualifying standard that a judge's impartiality be reasonably questioned."). Watson's claim to the contrary falls flat.

5. Last, we consider Watson's claim that the State failed to prove he was a habitual offender. The circuit court sentenced Watson as a habitual offender under Ark. Code Ann. § 5-4-501(d) (Repl. 2024) after the State proved Watson had been convicted of two prior violent felonies. The State proved one of Watson's prior convictions with a document titled "Order and Conditions of Probation." Watson argues that order was insufficient to prove the prior conviction, claiming that a document that merely shows he was placed on probation was not sufficient.[1] But the order does not simply show he was placed on probation. It shows Watson pled guilty, that the circuit court found him guilty, and that he was placed on probation. That is sufficient to prove "beyond a reasonable doubt that

---

[1]Watson also argues that order did not reflect that he was represented by counsel and thus could not be used to demonstrate a prior conviction. Because he did not make that argument below, the State did not have an opportunity to respond to it with additional evidence, so we decline to reach the unpreserved issue.

the defendant was [previously] convicted or found guilty." Ark. Code Ann. § 5-4-504(a) (Repl. 2025).

6. That leaves just one loose end. The State asks us to remand to correct a scrivener's error because the circuit court did not check the habitual-offender box on its sentencing order. We decline to remand this matter, "needless[ly] wasting . . . resources." *Smith v. State*, 2022 Ark. 95, at 22 (Womack, J., concurring). Instead, as the error is purely clerical, we exercise our power to "correct the sentence in lieu of remanding" and, as we have in other cases, affirm the sentence as modified. *Walden v. State*, 2014 Ark. 193, at 11, 433 S.W.3d 864, 871.

Affirmed as modified.

BAKER, C.J., and HUDSON, J., concur.

**KAREN R. BAKER, Chief Justice, concurring.** While I agree with the majority's decision to affirm Watson's rape conviction, I write separately because, based on this court's longstanding precedent, Watson's hearsay argument is not preserved for our review. Thus, I would decline to reach the merits of it.

On appeal, Watson challenges Officer Chelsey Stafford's testimony that, during the investigation, MV told Stafford that "Watson had been raping her since she was ten years old." At trial, Watson simply objected "to hearsay[.]" The circuit court overruled Watson's general hearsay objection, and the direct examination of Stafford continued. After Stafford's testimony had concluded and outside the presence of the jury, the circuit court expressed concern about its earlier ruling regarding the admissibility of Stafford's testimony recounting what MV said to her in the course of the investigation, because "we didn't establish any

groundwork for an excited utterance or anything like that." The court went on to explain that the testimony was admissible to "show why the investigator went on and did what she did the rest of that evening." No further objections were made.

Now on appeal, Watson argues that the circuit court abused its discretion by allowing Stafford to repeat at trial a prior consistent statement made by MV that improperly bolstered MV's testimony. He specifically contends that the prior consistent statement was inadmissible because MV's alleged motive to fabricate the rape allegations preexisted the statement she made to Stafford, and her motive was as great when the statement was made as it was when the testimony was given. Watson did not make these arguments at trial. In criminal cases, issues must be presented to the circuit court in order to preserve them for appeal. *Wilder v. State*, 2023 Ark. 137, at 5, 675 S.W.3d 424, 428. We have long held that arguments not raised at trial will not be addressed for the first time on appeal. *Coston v. State*, 2025 Ark. 143, at 6, 720 S.W.3d 241, 244. Likewise, parties cannot change the grounds for an objection on appeal but are bound by the scope and nature of their objections as presented at trial. *Id.* Therefore, I would decline to address the merits of Watson's prior-consistent-statement arguments because they were not presented to the circuit court as a basis for his general hearsay objection.

Accordingly, I must concur.

HUDSON, J., joins.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.

7